**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| MOLLY M. BLASKO, as Personal | ) | |
| Representative of the Estate of | ) | |
| SALLY DEAN McGHEE, Deceased | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:07 cv 00833 (RMU) |
| | ) | |
| WASHINGTON METROPOLITAN | ) | |
| AREA TRANSIT AUTHORITY | ) | |
| | ) | |
| Defendant. | ) | |

<u>MOTION BY DEFENDANT TO STRIKE KEVIN M. MCGRAIL, M.D</u>
<u>OR IN THE ALTERNATIVE TO COMPEL THE DEPOSITION OF THE WITNESS FOR A</u>
<u>REASONABLE FEE AND TO ORDER  SANCTIONS AGAINST PLAINTIFF</u>

The Defendant, WMATA, comes before this Court pursuant to Fed. R. Civ. P. Rules 26(a)(2), 26(a)(5) and 37(c) and moves to strike the Plaintiff Blasko's expert witness, Kevin M. McGrail, M.D.  In the alternative, the Defendant moves to compel Dr. McGrail's deposition at reasonable hourly rate for time actually spent in deposition. The Defendant also requests attorneys fees and costs associated with this motion.

PRELIMINARY STATEMENT

On February 11, 2008, counsel for defendant WMATA noticed the deposition of Kevin M. McGrail, M.D., for March 11, 2008, a date mutually convenient to counsel and the witness.  Dr. McGrail's only available time for deposition was 5:30 p.m.  In addition, Dr. McGrail required that the deposition be conducted in his office.  Defense counsel consented to those requirements and noted the deposition for March 11, 2008 at 5:30 pm at the Georgetown University Hospital, in Dr. McGrail's office.

On Friday, March 7, 2008, Plaintiff's counsel notified WMATA, by email, that Dr. McGrail charged $500.00 an hour for a deposition, but required a minimum payment of $1,500.  This fee was required regardless of the amount of time spent by Dr. McGrail in being deposed, up to, but not exceeding, three (3) hours.  Any additional time spent was to be paid at the rate of $500 per hour. Additionally, Dr. McGrail required that the $1,500 flat rate fee be paid 48 hours in advance of the deposition.  Due to the last minute notice of such a payment arrangement, ($1,500 in advance), Plaintiff's counsel offered to pay the advance fee, but required reimbursement in full from the Defendant, again regardless of the time ultimately spent in the deposition.

WMATA counsel immediately notified Plaintiff's counsel, in a reply email, that the minimum flat fee of $1,500 was not reasonable for the time required- approximately one hour, and that WMATA would not pay it.  However, in the same email exchange, WMATA consented to pay $500.00 hourly rate.  In response, Plaintiff's counsel, Patrick Regan,  unilaterally cancelled the deposition of Dr. McGrail. Plaintiff's counsel notified undersigned counsel of the cancellation in the following email message:

> "OK, we will cancel Dr. McGrail's deposition with the understanding that we will reschedule if, and only if, you prevail in your absurd argument that his costs for the deposition are unreasonable."

The emails between counsel are attached hereto as Exhibit #1.

The deposition has not gone forward and is not re-scheduled at this time.

2

## LEGAL ARGUMENT

Pursuant to Fed. R. Civ. P.  Rule 26(b)(4)(A), Defendant WMATA is entitled to take the deposition of an expert witness without the permission of the Court. Furthermore, Fed. R. Civ. P. 26(b)(4)(C) only requires that a party noting the expert witness' deposition pay "a reasonable fee for time spent in responding to the discovery under this subdivision."  Because Defendant has been prevented by Plaintiff's counsel from taking the deposition of Dr. McGrail, and because the Defendant was unwilling to pay an unreasonable flat rate fee of $1,500, Defendant requests that the Court preclude Dr. McGrail from testifying at trial.  Such a sanction is expressly provided for in Fed. R. Civ. P. Rule 37(c).

 In the alternative, the Defendant requests that the Court order the witness to appear for a deposition, and be compensated a reasonable hourly fee and that the Defendant be required to pay only for the time during which Dr. McGrail will actually be engaged in deposition.  Defendant states that such a payment will be made within a reasonable time following receipt of an invoice from Dr. McGrail's office.

A.     A Flat Fee Is Per Se Unreasonable.

As noted above, Dr. McGrail demands a flat rate fee of $1,500 for a minimum of three (3) hours,  and each hour after the first three hours will be billed an  additional $500 per hour.[1]   He will not reimburse any amount not expended.

---

[1] Defendant does not challenge the $500 hourly rate for a neurosurgeon testifying regarding the issues of pain and suffering in this case.  Defendant's own highly qualified and experienced expert neurosurgeon charged $500 an hour for his deposition.  However, that expert Romergryko Geocadin, MD, from Johns Hopkins University Hospital charged only for time spent and neither requested, nor required, a minimum fee with no correlation to time spent.

A number of Courts have considered the issue presented by expert witness fees. This Court and others around the country agree on several controlling principals. With respect to the issue of flat fee rates, virtually every court that has looked at the question has stricken such fee demands as unreasonable, and in some cases unreasonable and exorbitant.

The controlling principal followed by those courts is that these must be "'some reasonable relationship between the services rendered and the remuneration to which an expert is entitled.'" Mannarino v. United States, 218 F.R.D. 372, 375 (E.D. N.Y. 2003) (citations omitted); see also Feliciano, et al. v. County of Suffolk, 246 F.R.D. 134 (E.D. N.Y. 2007) (Flat rate fee of $7,500 unreasonable). "Ideally, Rule 26(b)(4)(C) is to compensate experts for their time in participating in litigation and to prevent one party from unfairly obtaining the benefit of the opposing party's expert work free from cost." Grinnell Corp. v. Hackett, 70 F.R.D. 326, 333 (D. R.I. 1976).

In Massasoit v. Carter, 227 F.R.D. 264, 267 (D. N.C. 2005) the court considered the question of whether a flat rate fee of $2,000 for a deposition only anticipated to last for 2-3 hours was unreasonable.   Striking the flat rate fee, the court reasoned that "a flat rate fee does raise a red flag with respect to whether expert fees are reasonable, and requires the court to closely scrutinize the situation."  Upon close scrutiny, the court concluded that "a flat rate fee is not normally reasonable." Id.  The Court went on to state that "[t]he mere fact that [opposing party's] expert and another expert choose to use flat rates does not convince the Court that such a tactic is reasonable. . . . Courts must be on guard against exorbitant expert fees, and retain

4

the ultimate responsibility to keep litigation costs from becoming unreasonable." Id.

The Defendant in this case does not anticipate the deposition of Dr. McGrail to take more than 1 to 1 ½ hours.  To require the Defendant to pay $1,500 flat rate fee regardless of the time actually involved could result in the hourly rate actually being $1,500 for a one-hour deposition.  A flat rate fee is contrary to both the spirit and the letter of the Federal Rule.

Dr. McGrail's deposition was set at 5:30 p.m.  He required it to be conducted at his office.  Such arrangements obviate the need for any argument that such a flat $1,500 fee is required by the doctor canceling  patient hours or scheduled surgery to be available for the deposition, or traveling to attend the deposition.    Grady v. Jefferson County Board of County Commissioners, et al., Civil Action No. 07-cv-01191-WDM-KMT, 2008 U.S. Dist. LEXIS 19853 at *5 (D. Co. Feb. 25, 2008) (attached as Exhibit 2).  Such accommodations of physicians and other experts, routinely made by defense and plaintiff counsel, are intended to keep costs of litigation down and to streamline, as much as possible, the deposition process and any inconvenience or disruption to the retained expert.

B.    $1,500 In Advance is Unreasonable and Not Required by Rule 26(b)(4)(C).

Courts also generally disapprove a flat rate fee requirement of an expert demanding advance payments.  Not until approximately 2 ½ days prior to the scheduled deposition did Counsel for the Defendant receive notice of Dr. McGrail's advance payment requirement.   As with the demand for $1,500  flat rate fee, undersigned counsel notified Plaintiff's counsel that payment in advance was neither

required by the Rules nor would it be tendered.

In <u>Harris v. Costco Wholesale Corp.</u>, 226 F.R.D. 675 (D. S.D. CA. 2005), the court held that the Federal Rule "does not state . . . that the expert's fees must be paid in advance of the deposition,  absent agreement [between counsel] to do so.  To the contrary, 'unlike ordinary witness fees, no rule requires that an opposing expert's deposition fees be tendered to the witness in advance . . .'." (citation omitted).

Therefore, Defendant requests that it not be required to pay any fee in advance of the deposition.

C.    <u>Plaintiff's Counsel Was Without Any Authority to Unilaterally Cancel the Deposition and Should Be Assessed the Costs of this Motion as a Sanction</u>.

As the attached email trail shows, upon being advised by undersigned counsel that the flat rate fee in advance should not be required, Plaintiff's counsel unilaterally cancelled the deposition of Dr. McGrail.  The appropriate way to handle this dispute would have been to participate in the deposition and to request a ruling by the court upon written motion regarding Dr. McGrail's fee, following the deposition.  In  <u>Harris v. Costco Wholesale Corp.</u>, 226 F.R.D., at 676-7, the court held that, "[b]ecause there is no rule allowing a party to terminate a deposition for the failure to pay opposing expert witness fee in advance, Plaintiff's counsel was wrong in doing so in the instant case."  As a sanction for such unilateral behavior without support in the rules, the Court ordered counsel to pay reasonable attorney's fee and costs incurred . . . related to Defendant's motion."

Fed. R. Civ. P. Rule 37(c) supports and provides for such a sanction.  It states

6

that, if a party fails to disclose information required by Fed. R. Civ. P. Rule 26(a) "without substantial justification," the Court may impose the sanction of requiring "payment of reasonable expenses, including attorney's fees, caused by the failure. . .". Fed. R. Civ. P. Rule 26(a)(5) provides that parties may obtain discovery by depositions upon oral examination. Plaintiff's counsel's actions interfered with Defendant's obtaining Dr. McGrail's deposition in a timely fashion. Plaintiff's counsel expressly required counsel to take her "absurd argument" to the Court for a ruling before any re-scheduling of the deposition.

Having done so, defense counsel hopes to demonstrate to the Court that the issues presented by Dr. McGrail's payment requirements have been considered by a number of U.S. district courts and onerous flat rate fees and advance payment of such fees are generally considered unjustified and unreasonable. Plaintiff's counsel was without justification in cancelling the deposition and placing conditions on rescheduling. Mr. Regan made no effort to persuade Dr. McGrail to moderate his demand for payment for the deposition. The Defendant requests that the Court order Plaintiff to pay Defendant reasonable fees and costs associated with this motion, as a sanction.

## CONCLUSION

The Courts have held that the party proposing the expert has the burden of justifying reasonableness of the fee and the fee structure. See, Feliciano v. County of Suffolk, 246 F.R.D. at 137; American Ref-fuel Company of Niagra, LP v. Caremeuse, 02-CV-814C(F) 2007 U.S. Dist. LEXIS 57216 at *3 (W.D. N.Y. Aug. 5, 2007)

(attached as Exhibit 3) and <u>United States v. New York Metro. Transp. Auth.</u>, CV 2004-4237 (SLT)(MDG) 2007 U.S. Dist. 45474 at *2 (June 22, 2007 E.D. N.Y.) (attached as Exhibit 4).  Plaintiff's counsel will be unable to meet that burden.  The Defendant requests that the motion be granted, that the witness, Dr. McGrail, be precluded from testifying, or, in the alternative, that the Court order that the parties schedule the deposition at a mutually convenient date and time, that the Court set a reasonable hourly fee for Dr. Grail's deposition, and that the Defendant be awarded reasonable attorneys fees associated with the motion.

Respectfully submitted,

WASHINGTON    METROPOLITAN    AREA TRANSIT AUTHORITY

_____/s/_____
Kathleen A. Carey, #357990
Assistant General Counsel
WMATA - COUNSEL
600 Fifth Street, N.W.
Washington, D.C.  20001
(202) 962-1496
kcarey@wmata.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 26th day of March 2008, a copy of the foregoing was

sent by e-filing to:

Peter C. Grenier
Michael Hibey
Bode & Grenier, L.L.P.
1150 Connecticut Ave., N.W.
Ninth Floor
Washington, D.C.  20036

Patrick M. Regan
Paul Cornoni
Regan, Zambri & Long
1919 M Street, N.W.
Suite 350
Washington, D.C. 20036

_____/s/_____
Kathleen A. Carey

9

## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MOLLY M. BLASKO, as Personal | ) | |
| Representative of the Estate of | ) | |
| SALLY DEAN McGHEE, Deceased | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:07 cv 00833 (RMU) |
| | ) | |
| WASHINGTON METROPOLITAN | ) | |
| AREA TRANSIT AUTHORITY | ) | |
| | ) | |
| Defendant. | ) | |

### ORDER

This matter came before the Court pursuant to the Defendant's Motion to Strike the Expert Witness or in the Alternative to Compel His Deposition At A Reasonable Hourly Rate and For Sanctions.  After considering the motion, the opposition thereto and the record in this case, the Court finds and concludes that the motion should be granted.

Therefore, it is this    Day of _____, 2008

ORDERED that the Plaintiff make her expert witness, Kevin M. McGrail, M.D. available for deposition at a mutually convenient date and time and, it is

FURTHER ORDERED that the witness not require a flat rate fee or a fee in advance for this deposition, but that he be paid the hourly fee of $_____ for the actual hours spent in the deposition, and that the fee be paid within a reasonable time following receipt of an invoice to defense counsel.

_____
Judge Ricardo Urbina
United States District Court

Electronic copies  to:

Kathleen A. Carey
Nicholas Nunzio
WMATA
Office of the General Counsel
600 5th Street, N.W.
Washington, D.C. 20001

Peter C. Grenier
Michael Hibey
Bode & Grenier, L.L.P.
1150 Connecticut Ave., N.W.
Ninth Floor
Washington, D.C.  20036

Patrick M. Regan
Paul Cornoni
Regan, Zambri & Long
1919 M Street, N.W.
Suite 350
Washington, D.C. 20036

EXHIBIT #1
EMAIL CORRESPONDENCE

**From:**        "Regan, Patrick" <pregan@reganfirm.com>
**To:**           "Kathleen Carey" <kcarey@wmata.com>, "Nicholas Nunzio" <nnunzio@wmata.com>
**Date:**        3/7/2008 10:10:28 AM
**Subject:**   Depositions of Plaintiff's medical experts

Kathleen:


Since I have not heard back from you concerning making arrangements for Dr. Batipps' bill for his deposition costs to be paid, I am assuming that you do not wish to proceed with this deposition.  Unless the financial arrangements have been finalized within the next day or so, we will contact Dr. Batipps office and indicate that WMATA is unwilling to assume financial responsibility for his fees and that the deposition should be cancelled.


With respect to Dr. McGrail's deposition scheduled for Tuesday afternoon, March 11, we have been notified that Dr. McGrail charges $500 per hour, with a minimum of $1500.  These charges have to be paid 48 hours in advance to secure the time on Dr. McGrail's calendar.  In order to avoid any problems, we will issue a check to Dr. McGrail and have it hand delivered to his office today, with the express understanding that you will reimburse this office for these costs in full.  Please let me know immediately if this arrangement is not acceptable.  Thanks.   Pat


Patrick M. Regan
Board Certified Civil Trial Attorney
Regan Zambri & Long, PLLC
Suite 350
1919 M Street, N.W.
Washington, DC 20036-3521
Phone 202-463-3030
Fax 202-463-0667
pregan@reganfirm.com <blocked::mailto:pregan@reganfirm.com>
www.reganfirm.com <blocked::http://www.reganfirm.com/>

THE INFORMATION CONTAINED IN THIS TRANSMISSION IS ATTORNEY PRIVILEGED AND/OR CONFIDENTIAL INFORMATION INTENDED FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE.  IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED.



**CC:**          "Cornoni, Paul" <PCornoni@reganfirm.com>, "Bertram, Catherine D." <CBertram@reganfirm.com>, "Kurlantzick, Lisa" <lkurlantzick@reganfirm.com>

**From:**      Kathleen Carey
**To:**        Regan, Patrick
**Date:**      3/7/2008 10:17:57 AM
**Subject:**   Re: Depositions of Plaintiff's medical experts

Pat
All arrangements with Dr. Batipps' office and Dr. Batipps personally have been made.  The deposition will
go forward.
With respect to Dr. McGrail, we do not intend to take three hours of his time for a deposition.  Requiring
$1500 in advance is not acceptable.   Requiring the payment of $1500 as a flat rate is not acceptable.
The rule requires a reasonable fee and does not require payment in advance.   We intend to go forward,
but will not assume that financial responsibility.  If necessary we will ask the Court to resolve the issue.
Kathleen

Kathleen A. Carey
Assistant General Counsel
WMATA
600 5th Street, N.W.
Washington, D.C.20001
202-962-1496
kcarey@wmata.com

THIS E-MAIL MESSAGE IS PRIVILEGED AND CONFIDENTIAL INFORMATION INTENDED ONLY FOR
THE USE OF THE RECIPIENT NAMED ABOVE.  IF THE READER OF THIS MESSAGE IS NOT THE
NAMED RECIPIENT, OR THE AGENT RESPONSIBLE TO DELIVER IT TO THE NAMED RECIPIENT,
YOU ARE NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION, COPYING OR OTHER USE OF
THIS INFORMATION COMMUNICATION IS STRICTLY PROHIBITED AND NO PRIVILEGE IS WAIVED.
IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY THE ABOVE-NAMED
INDIVIDUAL IMMEDIATELY, COLLECT IF NECESSARY.

>>> "Regan, Patrick" <pregan@reganfirm.com> 3/7/2008 9:06 AM >>>
Kathleen:

Since I have not heard back from you concerning making arrangements for
Dr. Batipps' bill for his deposition costs to be paid, I am assuming
that you do not wish to proceed with this deposition.  Unless the
financial arrangements have been finalized within the next day or so, we
will contact Dr. Batipps office and indicate that WMATA is unwilling to
assume financial responsibility for his fees and that the deposition
should be cancelled.

THIS E-MAIL MESSAGE IS PRIVILEGED AND CONFIDENTIAL INFORMATION INTENDED ONLY FOR THE USE OF THE RECIPIENT NAMED ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE NAMED RECIPIENT, OR THE AGENT RESPONSIBLE TO DELIVER IT TO THE NAMED RECIPIENT, YOU ARE NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION, COPYING OR OTHER USE OF THIS INFORMATION COMMUNICATION IS STRICTLY PROHIBITED AND NO PRIVILEGE IS WAIVED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY THE ABOVE-NAMED INDIVIDUAL IMMEDIATELY, COLLECT IF NECESSARY.

>>> "Regan, Patrick" <pregan@reganfirm.com> 3/7/2008 10:39 AM >>>
Kathleen:

I don't want to get distracted with a debate on what is reasonable and what is not for the Chairman of the Dept of Neurosurgery at Georgetown. Please file whatever you want with the court, and I will notify Dr. McGrail that the deposition is cancelled. We will agree to reschedule the deposition at a later date, assuming that you prevail in convincing Judge Urbina that Dr. McGrail's fees are unreasonable.

Neither of the plaintiff attorneys objected to your expert's charges or payment policies and I find this type of argument to be a complete waste of resources. Pat

Patrick M. Regan
Board Certified Civil Trial Attorney
Regan Zambri & Long, PLLC
Suite 350
1919 M Street, N.W.
Washington, DC 20036-3521
Phone 202-463-3030
Fax 202-463-0667
pregan@reganfirm.com
www.reganfirm.com

THE INFORMATION CONTAINED IN THIS TRANSMISSION IS ATTORNEY PRIVILEGED AND/OR CONFIDENTIAL INFORMATION INTENDED FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED.

-----Original Message-----
From: Kathleen Carey [mailto:kcarey@wmata.com]
Sent: Friday, March 07, 2008 10:18 AM
To: Regan, Patrick
Cc: Nicholas Nunzio
Subject: Re: Depositions of Plaintiff's medical experts

Pat
All arrangements with Dr. Batipps' office and Dr. Batipps personally have been made. The deposition will go forward.
With respect to Dr. McGrail, we do not intend to take three hours of his

**From:** Kathleen Carey
**To:** Regan, Patrick
**Date:** 3/7/2008 3:32:40 PM
**Subject:** RE: Depositions of Plaintiff's medical experts

Pat
Neither of our experts requested a minimum of $1500 either. I am not challenging the hourly amount.
Your opinion is your opinion. On Monday, I will file a motion to compel the deposition.
Kathleen

Kathleen A. Carey
Assistant General Counsel
WMATA
600 5th Street, N.W.
Washington, D.C.20001
202-962-1496
kcarey@wmata.com

THIS E-MAIL MESSAGE IS PRIVILEGED AND CONFIDENTIAL INFORMATION INTENDED ONLY FOR
THE USE OF THE RECIPIENT NAMED ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE
NAMED RECIPIENT, OR THE AGENT RESPONSIBLE TO DELIVER IT TO THE NAMED RECIPIENT,
YOU ARE NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION, COPYING OR OTHER USE OF
THIS INFORMATION COMMUNICATION IS STRICTLY PROHIBITED AND NO PRIVILEGE IS WAIVED.
IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY THE ABOVE-NAMED
INDIVIDUAL IMMEDIATELY, COLLECT IF NECESSARY.

>>> "Regan, Patrick" <pregan@reganfirm.com> 3/7/2008 10:39 AM >>>
Kathleen:

I don't want to get distracted with a debate on what is reasonable and
what is not for the Chairman of the Dept of Neurosurgery at Georgetown.
Please file whatever you want with the court, and I will notify Dr.
McGrail that the deposition is cancelled. We will agree to reschedule
the deposition at a later date, assuming that you prevail in convincing
Judge Urbina that Dr. McGrail's fees are unreasonable.

Neither of the plaintiff attorneys objected to your expert's charges or
payment policies and I find this type of argument to be a complete waste
of resources. Pat

Patrick M. Regan
Board Certified Civil Trial Attorney
Regan Zambri & Long, PLLC
Suite 350

**From:**        "Regan, Patrick" <pregan@reganfirm.com>
**To:**          "Kathleen Carey" <kcarey@wmata.com>
**Date:**        3/7/2008 4:39:21 PM
**Subject:**     RE: Depositions of Plaintiff's medical experts

Kathleen:  OK, we will cancel Dr. McGrail's deposition with the
understanding that we will reschedule if, and only if, you prevail in
your absurd argument that his costs for the deposition are unreasonable.
Pat

Patrick M. Regan
Board Certified Civil Trial Attorney
Regan Zambri & Long, PLLC
Suite 350
1919 M Street, N.W.
Washington, DC 20036-3521
Phone 202-463-3030
Fax 202-463-0667
pregan@reganfirm.com
www.reganfirm.com

THE INFORMATION CONTAINED IN THIS TRANSMISSION IS ATTORNEY PRIVILEGED
AND/OR CONFIDENTIAL INFORMATION INTENDED FOR THE USE OF THE INDIVIDUAL
OR ENTITY NAMED ABOVE.  IF THE READER OF THIS MESSAGE IS NOT THE
INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION,
DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED.


-----Original Message-----
From: Kathleen Carey [mailto:kcarey@wmata.com]
Sent: Friday, March 07, 2008 3:33 PM
To: Regan, Patrick
Subject: RE: Depositions of Plaintiff's medical experts

Pat
Neither of our experts requested a minimum of $1500 either.  I am not
challenging the hourly amount. Your opinion is your opinion.  On Monday,
I will file a motion to compel the deposition.
Kathleen

Kathleen A. Carey
Assistant General Counsel
WMATA
600 5th Street, N.W.
Washington, D.C.20001
202-962-1496
kcarey@wmata.com

EXHIBIT #2

<u>Grady v. Jefferson County Board of County Commissioners, et al.</u>, Civil Action No. 07-cv-01191-WDM-KMT, 2008 U.S.Dist. LEXIS 19853 at *5 (D.CO. Feb. 25, 2008)

123XM5

**Time of Request:** Thursday, March 20, 2008  12:35:35 EST
**Client ID/Project Name:**
**Number of Lines:** 216
**Job Number:**    1821:82399233

Research Information

**Service:**   Terms and Connectors Search
**Print Request:** Current Document: 8
**Source:** US District Court Cases, Combined
**Search Terms:** grady and jefferson

**Send to:**  CAREY, KATHLEEN
        WASHINGTON METRO AREA TRANSIT AUTHORITY
        600 5TH ST NW
        WASHINGTON, DC 20001-2610

8 of 240 DOCUMENTS

**DAWN GRADY, Plaintiff, v. JEFFERSON COUNTY BOARD OF COUNTY COMMISSIONERS, JEFFERSON COUNTY SHERIFF TED MINK, in his individual and official capacities, JEFFERSON COUNTY SHERIFF'S DEPARTMENT CHIEF DAVID WALCHER, in his individual and official capacities, DEPUTY JENNIFER GARNETT, in her individual and official capacities, and NURSES JANE DOES 1 and 2, Defendants.**

**Civil Action No. 07-cv-01191-WDM-KMT**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO**

*2008 U.S. Dist. LEXIS 19853*

**February 25, 2008, Decided
February 25, 2008, Filed**

**COUNSEL:** [*1] For Dawn Grady, Plaintiff: Mari Anne Newman, LEAD ATTORNEY, Darold W. Killmer, Sara J. Rich, Killmer, Lane & Newman, LLP, Denver, CO.

For Jefferson County, Colorado, Jefferson County Board of County Commissioners, Ted (I) Mink, Jefferson County Sheriff in his individual capacity, Ted Mink, Jefferson County Sheriff in his official capacity, David (I) Walcher, Jefferson County Sheriff Department Chief in his individual capacity, David Walcher, Jefferson County Sheriff Department Chief in his official capacity, Jennifer (I) Garnett, Deputy in her individual capacity, Jane Does 1 & 2, Jennifer Garnett, Deputy in her official capacity, Defendants: Writer Mott, LEAD ATTORNEY, James Lawrence Burgess, Jefferson County Attorney's Office, Golden, CO.

**JUDGES:** KATHLEEN M. TAFOYA, United States Magistrate Judge.

**OPINION BY:** KATHLEEN M. TAFOYA

**OPINION**

**ORDER**

This matter is before the Court on "Defendants' Motion to Reduce Fee for Plaintiff's Expert Witness, Richard Spiro, M.D." ("Motion" [Doc. No. 95, filed February 4, 2008]). The Court ordered expedited briefing on the issue on February 6, 2008 and the Plaintiff's Response was filed on February 12, 2008 ["Rsp." Doc. No. 98]. The Plaintiff filed a Reply on February 14, 2008. ["Reply" [*2] Doc. No. 100]

Defendant's Motion seeks a reduction in the hourly fee of $ 1,000.00 charged by Plaintiff's expert medical witness, Dr. Richard Spiro, for deposition testimony which occurred on February 18, 2008 in Pittsburgh, Pennsylvania pursuant to properly issued notice. (Motion, Exhibit A-1)

If a witness has been retained or specially employed to provide expert testimony, the retaining party must serve an expert report within the time frame set forth in *Fed. R. Civ. P. 26(a)(2)(C)*. Whether or not a doctor has been retained, as long as they have been identified as a witness who will provide expert opinion testimony, pursuant to Rule 702, they may be deposed. *Fed. R. Civ. P. 26(b)(4)(A)*. Rule 26(b)(4)(C) of the Federal Rules of Civil Procedure provides that "the court shall require that the party seeking discovery pay the expert a reasonable fee for time spent in responding to discovery," unless manifest injustice would result. *Fed. R. Civ. P. 24(b)(4)(C)*(emphasis added). Although few published cases discuss what constitutes a "reasonable" expert fee, seven factors have emerged to guide in the determination of the reasonableness of a fee

1) the witness' area of expertise; (2) the education [*3] and training required to provide the expert insight that is sought; (3) the prevailing rates of other comparably respected available experts; (4) the nature, quality and complexity of the discovery responses provided; (5) the fee actually being charged to the party who retained the expert; (6) fees traditionally charged by the expert on

2008 U.S. Dist. LEXIS 19853, *

related matters; and (6) any other factor likely to be of assistance to the court in balancing the interests implicated by *Rule 26.*

*Young v. Global 3, Inc.,* 2005 WL 1423594, *1 (D. Colo.). *See U.S. Energy Corp. v. Nukem, Inc., 163 F.R.D. 344, 345-46 (D. Colo. 1995); Mathis v. NYNEX, 165 F.R.D. 23, 24-25 (E.D.N.Y. 1996); Jochims v. Isuzu Motors, Ltd., 141 F.R.D. 493, 496 (S.D. Iowa 1992).* As a basic premise, the expert's fee should not be so high as to impair a party's access to necessary discovery or result in a windfall to the expert. *Young* at *1; *Mathis* at 24.

The plaintiff's expert witness, Dr. Richard Spiro, M.D., is a neurological surgeon located in Pittsburgh, Pennsylvania, the site of the deposition. (Motion, Exhibit A-2) Plaintiff has provided defendants with a fee schedule for Dr. Spiro wherein he purports to charge $ 2,000.00 per hour for deposition [*4] testimony (maximum total charge $ 6,000.00). (Motion, Exhibit A-3) Dr. Spiro has agreed to reduce his fee for the deposition in this case to $ 1,000.00 per hour. (Rsp. at 2, Exhibit 3 at P 3) Dr. Spiro's charge per trial day is $ 6,000.00 and his fee for a telephone conversation is $ 1,000 per hour. (Motion, Exhibit A-3). It is not clear whether Dr. Spiro's charges differ for plaintiff verses defendant, however, logically a "trial day cost" would likely be borne by plaintiff who is calling the expert on her behalf, while a deposition expense would be borne by the defense. The experience of this case shows that fees charged by medical experts are negotiable and dependent upon the bargaining skills or power of the party retaining the expert initially, as well as the concomitant loss of negotiating power possessed by the opposing side.

In support of their claim that $ 1,000.00 per hour is not a reasonable fee as provided by the Rule, the defendants have submitted the curriculum vitae ("CV") of two Colorado orthopaedic surgeons, Dr. Anthony Dwyer and Dr. A. Stewart Levy, who were retained as defense experts in this case and who have been deposed. (Motion, Exhibits A-5 and A-6) Both Colorado [*5] surgeons charged $ 450.00 per hour for their deposition testimony. (Motion at 6)

The plaintiff does not dispute that the Colorado surgeons charged $ 450.00 per hour for deposition testimony while Dr. Spiro is demanding $ 1,000.00 per hour for the same service. (Rsp. at 4). However, plaintiff argues that the two Colorado neurosurgeons are situated differently from Dr. Spiro because both Dr. Levy and Dr. Dwyer were, at different isolated points, treating physicians of the plaintiff. (Rsp. at 5-6). The Defendants

counter that they have designated and will call the two doctors primarily as experts and that factual testimony regarding any treatment of the plaintiff is a minor part of any testimony they will provide as experts. (Reply at 4)

Exhibit A-5 to the Motion is the sixteen page [1] CV of Dr. Anthony Dwyer. While mere length of a CV does not necessarily predict the value of its contents, Dr. Dwyer does have impressive credentials. He is licensed in six states and was a Fellow of the Royal College of Surgeons in Edinburgh, England and Australia. He has an extensive academic background, graduating from medical school in 1966 and is a professor at the Colorado Health Science Center as well [*6] as having been a clinical professor in New Orleans, Louisiana, and a lecturer in various locations around the world. Dr. Dwyer lists twenty-four different publications which he authored or co-authored, as well as eight book chapters. He also was a presenter at forty-four national gatherings and exhibits. Dr. Dwyer is a board member or member of a number of regional or national sub-specialty orthopaedic societies, including acting as a chairman of the North American Spine Society and also served on the Legal Issues Committee of that society.

> 1   The court notes that in several instances, the CV appears to be in question and answer format and several answers indicate Dr. Dwyer had no experience in the questioned area.

Based on these credentials, Dr. Dwyer's published fee schedule indicates he will charge between $ 750 - $ 1,000 per hour to appear for deposition testimony. (Rsp. Exhibit 7) The fee schedule also notes a charge of $ 600.00 per hour for telephonic legal consultation. In or about July, 2006, Dr. Dwyer charged the plaintiff's attorney $ 300.00 for telephone consultation for one-half hour, apparently based on the published fee schedule. (Rsp. at 4)

According to Exhibit A-6 of the [*7] Motion, Dr. A. Stewart Levy is the Chief of Neurosurgery at St. Anthony Central Hospital. Dr. Levy has a nine page CV indicating he is licensed in two states and has been a professor of surgery since 1997 at the Colorado Health Sciences Center. Dr. Levy boasts an outstanding academic record and graduated from medical school in 1990. He is on the board of directors for several committee posts and is a member of the Institutional Review Board for the Spinal Injury Foundation. He is currently Secretary of the Rocky Mountain Neurosurgical Society, having been Vice President in 2006-2007. He has presented at sixty-two lecture series, mostly on brain and spine injuries, many involving snowboarding and skiing accidents.

Based on his credentials, Dr. Levy's published fee

2008 U.S. Dist. LEXIS 19853, *

schedule indicates he charges $ 1,000 per hour for deposition testimony and $ 1,000 per hour for legal consultation. (Rsp. Exhibit 6) On December 7, 2007, Dr. Levy quoted a price of $ 500 for a one-half hour meeting with plaintiff's counsel, the full fee schedule rate. (Rsp. at 5) The plaintiff decided against the meeting on the basis of cost.

Plaintiff's expert witness, Dr. Richard Spiro, studied at Johns Hopkins and graduated [*8] first in his class from the University of South Alabama College of Medicine (1/64) in 1998, where he received several honors and awards and completed his neurosurgical residency in 2004. (Motion, Exhibit A-7) He has been a professor at the University of Pittsburgh Medical Center where he is the Chief, Spine Surgery. He is licensed in Pennsylvania and received his board certification in neurological surgery in 2006. He has authored five peer reviewed articles along with other doctors, and one book chapter. Additionally, he participated in three peer reviewed abstracts and has presented lectures on eight occasions, mostly in the area of tumor necrosis factor. Dr. Spiro, as noted earlier, has a published fee rate of $ 2,000 per hour for deposition testimony, but has agreed to charge the defendant's $ 1,000 per hour in this case. The defendants continue to argue that this reduced rate is excessive.

While all the medical professionals have impressive credentials, the two more senior Colorado orthopaedic surgeons have far more lengthy careers and credentials, especially in the area of the type of injuries to the plaintiff. There is simply no contest between Dr. Spiro and Drs. Levy and Dwyer [*9] when analyzing the seven factors relevant to the reasonable fee calculation: 1) the witness' area of expertise - all the neurosurgeons specialize in the area where plaintiff was most affected, but the Colorado doctors have far more experience in that specialty than Dr. Spiro; (2) the education and training required to provide the expert insight that is sought - all doctors have outstanding academic credentials, however the size and prominence of their schools and residencies differ; (3) the prevailing rates of other comparably respected available experts - the two Colorado doctors are charging $ 450 per hour for deposition testimony in this case, while the least experienced physician, Dr. Spiro, is charging $ 1,000 per hour. Further, even without the bargained for rate adjustments, the fee schedules of the three doctors indicate that Dr. Spiro is charging at least twice as much as the other two physicians who have more experience; (4) the nature, quality and complexity of the discovery responses provided - the parties have not addressed this issue and the record is therefore devoid of information upon which the court can make a comparison; (5) the fee actually being charged to the

[*10] party who retained the expert - the plaintiff claims to have paid Dr. Spiro $ 3,500 in the case. (Rsp. at 6) Presumably this figure would include a records review for $ 3,000 [2] but it is unclear what else may have been included in that fee; (6) fees traditionally charged by the expert on related matters - neither party has presented evidence on this point other than the three fee schedules referenced herein. On the fee schedules Dr. Spiro is charging more than twice as much for deposition testimony, a little less than twice the rate for Dr. Dwyer's telephone consultation and the same rate as telephone consultation with Dr. Levy, and for trial a flat $ 6,000 per day as compared to Dr. Levy at $ 1,250 per hour and Dr. Dwyer at $ 1,000 per hour, neither with a minimum number of hours; and (6) any other factor likely to be of assistance to the court in balancing the interests implicated by *Rule 26*.

2 Dr. Spiro's fee schedule says the record review "assumes four hours." (Exhibit 95-4)

Although it is unknown what Dr. Spiro charges for an office visit, it is unlikely that he charges $ 1,000 per hour. [3] One court, examining the issue of reasonableness of expert witness fees stated

[T]he Court [*11] recognizes that depositions of an adverse expert are, at times, stressful and, unfortunately, usually adversarial in nature. Moreover, depositions require better preparation and more thoughtful and precise answers by the deponent than a casual office visit with retaining counsel or a patient. Thus, the Court finds it reasonable to charge a modestly higher fee for a deposition taken by adverse counsel but not two or more times the cost for a medical/legal consultation.

*Edin v. Paul Revere Life Ins. Co. 188 F.R.D. 543, *547 (D. Ariz. 1999)*(emphasis added).

3 *Dobson v. Matrixx Initiatives, Inc.,* 2007 WL842130, *2 (S.D. Fla. 2007) reported an estimated salary range for a neurologist to be $ 171,000-$ 345,000. This court finds the approximated salaries of the universe of neurologists to be too general to be of specific use when comparing one Pennsylvania neurosurgeon specifically to two Colorado neurosurgeons, all preparing to testify in the same case. However, it does support the inference that Dr. Spiro does not

2008 U.S. Dist. LEXIS 19853, *

charge his neurosurgery patients $ 1,000 per hour, or for that matter, even $ 500 per hour. Based on a 40 hour work week (a debatable proposition from the start given statements [*12] in the Response about Dr. Spiro's work day), a $ 345,000 per year salary equates to roughly $ 166 per hour. The more hours above forty that a salaried employee works, the less the hourly rate.

Defendants suggest that "a scheduled deposition prevents Dr. Spiro 'from performing surgery or continuing with [his] normal routine'" theoretically costing him money as payment for the foregone surgery. There is nothing in the record to support this sweeping assertion. To the contrary, the defendants set the deposition at 4:00 p.m. in order to avoid any conflict with Dr. Spiro's surgical duties and responsibilities. Dr. Spiro's own assistant confirmed that this setting would not conflict with Dr. Spiro's medical or surgical schedule. (Reply at 6)

Other courts addressing reasonableness of expert fees have reached varying results. *See, Hose v. Chicago and North Western Transportation Co., 154 F.R.D. 222, 227 (S. D. Iowa 1994)* (reducing expert neurologist's fee from $ 800/hr, the doctor's usual hourly charge for neurological testing, to $ 400/hr, where expert was not a preeminent expert in his field, did not possess knowledge or training unique from other neurologists, had his office in Papillion, [*13] Nebraska, as was the plaintiff's treating physician; comparable experts charged between $ 375 and $ 429 an hour); *Dominguez v. Syntex Labs, Inc., 149 F.R.D. 166, 170 (S.D. Ind. 1993)*(reducing fee from $ 800/hr to $ 341.50/hr for neurologist specializing in smell and taste disorders, where doctor charged other clients $ 800/hr for depositions but billed $ 94/hr for patient office visits, and other neurologists with similar qualifications charged between $ 120 and $ 300/hr for depositions); *Draper v. Red Devil, Inc., 114 F.R.D. 46, 48 (E.D. Ark. 1987)*(accepting electrical engineer's requested fee of $ 110 per hour as reasonable); *Anthony v. Abbott Labs., 106 F.R.D. 461, 465 (D.R.I.1985)*(awarding physician $ 250 per hour as the "outermost periphery of the range of sustainable awards" where doctor was "one of only a handful of physicians" who had the qualifications and expertise to testify about causative effects of DES and in his last deposition had charged a "friendly" litigant $ 250 per hour for his time). Of course, the precise dollar amount of fees per hour discussed in terms of older cases are not particularly relevant to the dollar amount of reasonable fees charged in 2008. The [*14] parity principles set out in the seven categories of comparisons, however, remain viable and the cases are instructive in their quantitative analyses.

Against this backdrop, the court must assure that there is some reasonable relationship between the services rendered and the remuneration to which the expert is entitled. "Unless the courts patrol the battlefield to insure fairness, the circumstances invite extortionate fee setting." *U.S. Energy Corp., 163 F.R.D. at 346-47*. In making those determinations, courts must not feel bound by an "agreement" which would result in a patently unreasonable fee. "[W]hile a party may contract with any expert it chooses, the court will not automatically tax the opposing party with any unreasonable fees charged by the expert." *Kernke v. Menninger Clinic, Inc., 2002 WL 334901, *1 (D. Kan. 2002); Young, 2005 WL1423594 at 2* (expert physician witness's fee of $ 1,200.00 per hour for deposition testimony grossly exorbitant; court reduced to reasonable fee of $ 500.00 per hour.)

This court finds that the deposition hourly rate of $ 2,000 per hour as set forth in Dr. Spiro's fee schedule is grossly excessive and comes near to being extortionate. More problematic, [*15] however, is the also steep fee of $ 1,000 per hour actually being charged by Dr. Spiro for his deposition testimony because both Colorado neurosurgeons list this as their own published fee for deposition testimony, even though neither is actually charging these rates. In spite of their reduction in rates for this case to the reasonable fee of $ 450 per hour for deposition testimony, however, both Colorado physicians either billed or quoted rates for consultation with plaintiff's counsel based upon their published fee schedules.

In spite of this, however, the court must not shirk its independent responsibility as gatekeeper against excessive windfall billing by medical experts appearing in federal court. *See Young, 2005 WL1423594 at 2.* Based on the facts before the court, the court finds that a reasonable hourly rate for Dr. Spiro's deposition testimony is not more than $ 600 per hour. [4]

————————
4    The same amount actually charged to the plaintiff for legal consultation with defense expert Dr. Anthony Dwyer as noted *supra*.
————————

Accordingly, for the foregoing reasons, it is hereby ORDERED

Defendants' Motion to Reduce Fee for Plaintiff's Expert Witness, Richard Spiro, M.D. [Doc. No. 95] is GRANTED. Compensation [*16] provided to Dr. Spiro for his deposition testimony will be made consistent with this order.

Dated this 25th day of February, 2008.

BY THE COURT:

s/ Kathleen M. Tafoya                              United States Magistrate Judge

KATHLEEN M. TAFOYA

EXHIBIT #3

<u>American Ref-fuel Company of Niagra, LP v. Caremeuse, et al.</u>, O2-CV-814C(F),
2007 U.S.Dist. LEXIS 57216 at *3 (W.D.N.Y. Aug. 5, 2007)

123XM5

**Time of Request:** Thursday, March 20, 2008   12:36:58 EST
**Client ID/Project Name:**
**Number of Lines:** 110
**Job Number:**      1862:82399646

Research Information

**Service:**   Terms and Connectors Search
**Print Request:** Current Document: 2
**Source:** US District Court Cases, Combined
**Search Terms:** american ref-fuel

**Send to:**  CAREY, KATHLEEN
             WASHINGTON METRO AREA TRANSIT AUTHORITY
             600 5TH ST NW
             WASHINGTON, DC 20001-2610

2 of 20 DOCUMENTS

**AMERICAN REF-FUEL COMPANY OF NIAGARA, LP, Plaintiff, -vs- CAREMEUSE N.A. and GENSIMORE TRUCKING, INC., Defendants.**

**02-CV-814C(F)**

**UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF NEW YORK**

*2007 U.S. Dist. LEXIS 57216*

**August 5, 2007, Decided
August 6, 2007, Filed**

**SUBSEQUENT HISTORY:** Summary judgment granted, in part, summary judgment denied, in part by, Sub nomine at *Am. Ref-Fuel Co. of Niagara, LP v. Gensimore Trucking, Inc., 2007 U.S. Dist. LEXIS 69141 (W.D.N.Y., Sept. 17, 2007)*

**COUNSEL:** [*1] For American REF-Fuel Company of Niagara, LP, Plaintiff: Mark D. Goris, LEAD ATTORNEY, Mitchell Goris Stokes & Knych, LLC, Cazenovia, NY; Sean P. Carter, William E. Gericke, LEAD ATTORNEYS, Cozen O'Connor, Philadelphia, PA.

For Gensimore Trucking, Inc., Defendant, Cross Defendant: Matthew J. Kelly, LEAD ATTORNEY, Roemer Wallens & Mineaux LLP, Albany, NY.

For Caremeuse N.A., Defendant: Heath Adam Bender, Eustace & Marquez, White Plains, NY.

For Caremeuse N.A., Cross Claimant: Heath Adam Bender, LEAD ATTORNEY, Eustace & Marquez, White Plains, NY.

**JUDGES:** John T. Curtin, United States District Judge.

**OPINION BY:** John T. Curtin

**OPINION**

In a letter dated June 14, 2007, counsel for defendant Gensimore Trucking, Inc. requested the court's intervention to resolve a dispute about payment of costs associated with the deposition of defendant's expert witness, Joseph Bieron, Ph.D., which took place on April 24, 2007. In response to this request, the court conducted a telephone conference with counsel on June 26, 2007, during which it became evident that informal resolution of the matter was not possible. The court then set a schedule for further submissions, which have now been received and reviewed.

The facts of the dispute are [*2] as follows. Dr. Bieron is a professor of chemistry at Canisius College in Buffalo, retained by defendant Gensimore Trucking to provide an expert opinion regarding the cause of the explosion at plaintiff's facility. Dr. Bieron's deposition took approximately two-and-a-half hours. At the conclusion of the deposition, defense counsel presented plaintiff's counsel with a bill for Dr. Bieron's services in the amount of $ 2,192.50, representing three-and-a-half hours of deposition time, and fourteen hours of preparation time, billed at the rate of $ 125 per hour.

In a letter dated April 25, 2007, plaintiff's counsel objected to that portion of Dr. Bieron's bill related to reimbursement for time spent preparing for the deposition, and requested a revised invoice reflecting only actual deposition time and travel expenses. Defense counsel responded by letter dated May 7, 2007, in which he advised plaintiff's counsel of federal case law authority for reimbursement of reasonable expenses for preparatory time. Plaintiff's counsel continued to object, and defense counsel sought relief from the court.

Under the federal rules governing expert discovery, "[u]nless manifest injustice would result, . [*3] . . the court shall require that the party seeking discovery pay the expert a reasonable fee for time spent in responding to discovery under this subdivision . . . . *Fed. R. Civ. P. 26(b)(4)(C)*. The district courts in the Second Circuit, including this court, have consistently held that time spent by an expert preparing for a deposition is compensable under *Rule 26(b)(4)(C). See New York v. Solvent Chemical Co., Inc., 210 F.R.D. 462, 471 (W.D.N.Y. 2002)* (citing cases).

2007 U.S. Dist. LEXIS 57216, *

That said, there is also great risk of abuse in compensating a party for his expert's deposition preparation time, since that time usually includes much of what ultimately is trial preparation work for the party retaining the expert. As Wright & Miller suggest, "[t]he open-ended possibility that much ordinary trial preparation might be charged to the opponent by this device warrants caution."

*Constellation Power Source, Inc. v. Select Energy, Inc., 2007 U.S. Dist. LEXIS 4583, 2007 WL 188135, at *8 (D.Conn. January 23, 2007)* (quoting Wright & Miller, FEDERAL PRACTICE & PROCEDURE § 2034, at 471).

In implementing this cautionary approach, the courts look to several factors to determine whether the fee requested by the expert witness is reasonable under [*4] the circumstances, including (1) the witness's area of expertise; (2) the education and training required to provide the expert insight sought; (3) prevailing rates for other comparably respected available experts; (4) the nature, quality, and complexity of the discovery responses provided; (5) the cost of living in the particular geographic area; (6) the fee being charged by the expert to the party who retained him; (7) fees traditionally charged by the expert on related matters, and (8) "any other factor likely to be of assistance to the court in balancing the interests implicated by *Rule 26*." *Mathis v. NYNEX*, 165 F.R.D. 23, 24-25 (E.D.N.Y. 1996), quoted in *Mannarino v. United States*, 218 F.R.D. 372, 374 (E.D.N.Y. 2003). "The party seeking reimbursement of deposition fees bears the burden of proving reasonableness. If the parties provide little evidence to support their interpretation of a reasonable rate, the court may use its discretion to determine a reasonable fee." *Solvent Chemical*, 210 F.R.D. at 468 (citation omitted).

The *Mannarino* case, which both parties have cited in their submissions, provides helpful guidance. There, the deposition of a bio-mechanical engineer retained [*5] by the defendant to present an expert opinion on the cause of injuries suffered by the plaintiff in an automobile accident, lasted a little more than an hour. The expert sought compensation for eight hours of preparation time, but the court found this request excessive.

No one knew in advance that the deposition itself would last only one hour, but counsel for plaintiff did indicate beforehand that she expected it would last

only about three hours. . . . Moreover, as plaintiff points out, [the expert witness] had prepared his expert report only a few months prior to the deposition, and he testified that in preparing for the deposition he did not review anything that he had not already reviewed in preparing the report. . . . Based on these factors, and on the fact that the issues in this case are not complex, I find that four hours of preparation time would have been reasonable.

*Mannarino*, 218 F.R.D. at 376.

Although no hard and fast formula can be drawn from the finding in *Mannarino*, the circumstances of Dr. Bieron's deposition in this case warrant similar treatment. Dr. Bieron has submitted a sworn affidavit (Item 82) in which he states that, based on information received from defense [*6] counsel, it was anticipated by all involved that his deposition would last seven hours. He was surprised that it lasted only two-and-a-half hours. During his fourteen-hour preparation he reviewed the deposition transcripts of eight other witnesses in the case, as well as laboratory test results, photographs, and other information produced during discovery. By his own admission, this is the same information which he had previously reviewed and relied upon in producing two expert witness reports--the first submitted in December 2006, setting forth his opinions on the cause of the explosion, and the second submitted in January 2007, responding to the opinions set forth in the reports submitted by the other parties' expert witnesses.

While it is true that the technical analysis involved in determining causation in this somewhat complex case may be more difficult than that required in *Mannarino* and other cases, it is clear to the court from the materials submitted that much of the time spent by Dr. Bieron in preparing for his deposition involved duplication of effort attributable to "ordinary trial preparation," which is not compensable under *Rule 26(b)(4)(C)*. Dr. Bieron did not review any [*7] information in preparation for his deposition in April that he had not already reviewed twice before, the last time as recently as January. Considering these circumstances in light of the other pertinent factors outlined above, it would be unreasonable to charge plaintiff for the entire fourteen hours of preparation time.

Accordingly, the court directs plaintiff, as the party seeking the discovery at issue, to compensate Dr. Bieron for two-and-a-half hours of deposition time, and seven

hours of preparation time, at the rate of $ 125 per hour (along with all other reasonable expenses incurred attending the deposition, including travel time, as agreed to by plaintiff's counsel).

So ordered.

\s\ John T. Curtin

United States District Judge

Dated: 8/05/07, 2007

EXHIBIT #4

<u>United States of America v. New York Metropolitan Transportation Authority</u>, CV 2004-4237 (SLT)(MDG), 2007 U.S. Dist. 45474 at *2 (June 22, 2007 E.D.N.Y.)

123XM5

**Time of Request:** Thursday, March 20, 2008  12:40:11 EST

**Client ID/Project Name:**

**Number of Lines:** 141

**Job Number:**    1841:82400707

Research Information

**Service:**   Terms and Connectors Search

**Print Request:** Current Document: 2

**Source:** US District Court Cases, Combined

**Search Terms:** "new york metropolitan transportation authority" and date geq
    (03/20/2007)

**Send to:**  CAREY, KATHLEEN
             WASHINGTON METRO AREA TRANSIT AUTHORITY
             600 5TH ST NW
             WASHINGTON, DC 20001-2610

2007 U.S. Dist. LEXIS 45474, *

2 of 2 DOCUMENTS

**UNITED STATES OF AMERICA, Plaintiff, - against - NEW YORK METROPOLITAN TRANSPORTATION AUTHORITY, et al., Defendants. This Order pertains to: STEPHANIE LEWIS v. NEW YORK CITY TRANSIT AUTHORITY, et al.,**

**CV 2004-4237 (SLT) (MDG), 04-CV-02331-SLT-MDG**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK**

*2007 U.S. Dist. LEXIS 45474*

**June 22, 2007, Decided**
**June 22, 2007, Filed**

**PRIOR HISTORY:** *United States v. N.Y. Metro. Transp. Auth., 2006 U.S. Dist. LEXIS 93920 (E.D.N.Y., Dec. 29, 2006)*

**COUNSEL:** [*1] For Stephanie Lewis, Plaintiff: Omar T. Mohammedi, LEAD ATTORNEY, Law Firm of Omar T. Mohammedi, New York, NY; Ally Hack, The Law Firm of Omar T. Mohammedi, New York, NY.

For New York City Transit Authority, Richard Dicciarello, Richard Herman, Steve Lopiano, Tommy Davis, Benny Pepprino, Defendants: Richard Schoolman, New York Transit Authority Law Dept., Brooklyn, NY; Rhonda J. Moll, Metropolitan Transportation Authority, New York, NY.

**JUDGES:** MARILYN D. GO, UNITED STATES MAGISTRATE JUDGE.

**OPINION BY:** MARILYN D. GO

**OPINION**

*ORDER*

This order addresses the disputes regarding the amount of fees each party must pay the other party's expert for testifying at depositions. *See* letters dated November 1, 2006 (ct. doc. 120) [1] and November 7, 2006 (ct. doc. 124) of Rhonda J. Moll; letters dated November 6, 2006 (ct. doc. 122) and November 10, 2006 (ct. doc. 125) of Omar T. Mohammedi.

1 All citations to court document numbers are to the filings in the lead case (04-CV-4237).

*DISCUSSION*

As the parties acknowledge, they are liable to pay the opposing expert deposed a "reasonable fee for time spent in responding to discovery . . . ." *Fed. R. Civ. P. 26(b)(4)*. Among the factors courts consider in determining the "reasonableness" of [*2] a fee are: the witness's area of expertise; the education and training required for the expert insight sought; the prevailing rates for other comparably respected available experts; the nature, quality and complexity of the discovery responses provided; the cost of living in the particular geographic area; the fee being charged by the expert to the party who retained him; the fees charged by the expert in similar matters; and any other factor likely to be of assistance to the court in balancing the interests implicated by *Rule 26*. *See Adams v. Memorial Sloan Kettering Cancer Ctr., No. 00 Civ. 9377 (SHS), 2002 U.S. Dist. LEXIS 11688, 2002 WL 1401979, at *1 (S.D.N.Y. June 28, 2002); see also Coleman v. Dydula, 190 F.R.D. 320, 324 (W.D.N.Y. 1999); Magee v. Paul Revere Life Ins. Co., 172 F.R.D. 627, 645 (E.D.N.Y. 1997).* The party seeking reimbursement bears the burden of demonstrating the reasonableness of the expert fee sought. *See Carafino v. Forester, No. 03 Civ. 6258 (PKL) (DF), 2005 U.S. Dist. LEXIS 7718, 2005 WL 1020892, at *1 (S.D.N.Y. Apr. 29, 2005)* (citation omitted). Where a party fails to meet its burden, the court may exercise its discretion to determine a reasonable fee. *See Mannarino v. United States, 218 F.R.D. 372, 374 (E.D.N.Y. 2003)* [*3] (quoting *New York v. Solvent Chem. Co., Inc., 210 F.R.D. 462, 468 (W.D.N.Y. 2002)*).

Both sides seek compensation at a rate of $ 400 per hour for their experts and oppose that rate sought by the other side. After examining the curricula vitae and expert

2007 U.S. Dist. LEXIS 45474, *

reports of Dr. Reich and Dr. Goldstein, I find both experts well qualified in their fields. Defendants' expert, Dr. Robert L. Goldstein ("Dr. Goldstein"), is a board certified psychiatrist who graduated from Chicago Medical School in 1965. In addition to maintaining a private practice since 1970, Dr. Goldstein has held several teaching positions, most recently as a Clinical Professor of Psychiatry at Columbia University's College of Physicians and Surgeons. Dr. Goldstein has also authored over 80 publications in leading professional journals and authoritative texts and has extensive experience testifying as an expert witness. *See* ct. doc. 120, Ex. 9.

Plaintiff's expert, Stephen Reich, Ph.D. ("Dr. Reich"), is a licensed psychologist who received his doctorate in clinical psychology from Fordham University in 1972. Besides having a private practice since 1974, he has been an Assistant Attending Psychologist at the Payne Whitney Psychiatric [*4] Clinic of New York Presbyterian Hospital since 1972. In addition, Dr. Reich has held teaching positions since 1972, most recently as an Adjunct Assistant Professor of Psychology at Cornell University Medical College. Dr. Reich has extensive experience testifying as an expert witness. *See* ct. doc. 122, Ex. 5.

Plaintiff argues that Dr. Goldstein should be compensated at the same $ 250 per hour rate that he charges defendant NYCTA, particularly since her counsel did not anticipate that Dr. Goldstein would seek compensation at a higher rate. Ct. doc. 122. However, the rate schedule that plaintiff received clearly stated that the $ 250 per hour rate was the "Fee Schedule for *Government Agencies.*" Ct. doc. 122, Ex. 1 (emphasis added). Irrespective of whether plaintiff expected to pay a lower rate, the amount of fees an expert charges to the party who retained him is but one of several factors discussed above in determining the reasonableness of an expert's fee. *See Garnier v. Illinois Tool Works, Inc., No. 04 CV 1825 (NGG) (KAM), 2006 U.S. Dist. LEXIS 22361, 2006 WL 1085080, at *2 (E.D.N.Y. Apr. 24, 2006)* (the factors merely serve as a guide and no one factor is dispositive) (internal citation and quotation marks omitted); [*5] *see also Magee, 172 F.R.D. at 646* (court weighed several factors, including expert's lower rate for the retaining party, before reducing the expert's requested hourly fee of $ 350 to $ 250).

Defendants argue that the requested rate is reasonable in light of the fact other courts have awarded Dr. Goldstein fees at a rate of $ 350 per hour in 2005 and $ 250 per hour in 1997. *See Carafino, 2005 U.S. Dist. LEXIS 7718, 2005 WL 1020892 at *1* ($ 350 hourly rate awarded subject to reconsideration upon submission of

further documentation regarding Dr. Goldstein's credentials); *Magee, 172 F.R.D. at 645* ($ 250 hourly rate awarded). However, the judge in *Carafino* did not address a dual rate structure and the judge in *Magee,* who did, reduced Dr. Goldstein's fee to the amount charged to the party retaining him. Notably, "courts most often reduce expert fee requests when the expert seeks to charge the opposing party a higher rate than the expert charges the retaining party." *E.E.O.C. v. Johnson & Higgins, Inc., No. 93 Civ. 5481 (LBS) (AJP), 1999 U.S. Dist. LEXIS 478, 1999 WL 32909, at *4 (S.D.N.Y. Jan. 21, 1999)* (citing cases). However, in the majority of those cases where the court reduced an expert's fee to the hourly rate charged to the retaining party, [*6] there was no explanation for the higher rate charged. *See, e.g., Ohuche v. British Airways, No. 97 Civ. 1853 (JSM) (RLE), 1998 U.S. Dist. LEXIS 23433, 1998 WL 240481, at *1 (S.D.N.Y. May 11, 1998)* (fee of expert reduced to the $ 250 an hour rate he charged the retaining party in the absence of explanation for higher rate charged the opposing party); *Jochims v. Isuzu Motors, Ltd., 141 F.R.D. 493, 496-97 (S.D. Iowa 1992)* (hourly rate of expert reduced to the amount charged retaining party where no evidence that the expert had ever charged or been paid the hourly rate sought, a rate double the amount charged the retaining party). In contrast, Dr. Goldstein apparently has charged the $ 400 per hour rate sought, albeit not to governmental entities.

After considering the foregoing factors, I find that $ 350 per hour is a reasonable rate for Dr. Goldstein's time at his deposition. *See Garnier, 2006 U.S. Dist. LEXIS 22361, 2006 WL 1085080 at *1* (expert psychiatrist's fee reduced from $ 450 per hour to $ 350 per hour for time reasonably expended preparing for and testifying at his deposition); *see also Cotto v. Clark Investigations & Security Serv., Ltd., No. 03 Civ. 2878 (RMB) (DFE), 2003 WL 22852240 (S.D.N.Y. Dec. 1, 2003)* ($ 400 per hour rate for [*7] deposing defendant's expert); *Carafino, 2005 U.S. Dist. LEXIS 7718, 2005 WL 1020892 at *2* (Dr. Goldstein's fee reduced from $ 500 per hour to $ 350 per hour for testifying at his deposition, subject to adjustment upon demonstration of the reasonableness of the requested rate of $ 500 per hour).

On the other hand, although Dr. Reich charged plaintiff the same rate sought by plaintiff's expert witness for his compensation, I find that plaintiff's proposed rate of $ 400 per hour for her expert's time is unreasonable. Defendants' reliance on *Mock v. Johnson, 218 F.R.D. 680 (D. Hawaii 2003),* to support their position that $ 135 per hour is a reasonable fee for a psychologist is misplaced since the court in that case simply approved the billing rate sought by plaintiff's psychologist, who practiced in the state farthest away from New York as

possible. This Court could not find any reported cases from this region regarding the appropriate fees to be awarded testifying psychologists. However, psychiatrists, unlike psychologists and other mental health experts, must undergo medical training besides specialized training in mental health issues. In addition, psychiatrists, who have earnings comparable to other doctors, generally [*8] earn far more than psychologists. *See* U.S. Department of Labor, Bureau of Labor Statistics, Occupational Employment and Wages, May 2006 (noting median annual wage for psychiatrists is $ 149,990 and for psychologists is $ 80,360) (*http://stats.bls.gov/oes/current/oes291066.htm; http://stats.bls.gov/oes/current/oes193039.htm); see also Magee, 172 F.R.D. at 646* (noting that plaintiff's treating psychologist and expert psychiatrist charge $ 120 and $ 250 per hour, respectively). While the salary differential between these two professions may be narrower for those who engage in forensics, plaintiff has not presented any evidence other than Dr. Reich's customary billing rate to establish the prevailing rates for other expert psychologists with comparable qualifications. Therefore,

based on the totality of the information presented, I find that a reasonable fee for Dr. Reich's appearance at his deposition is $ 225 per hour.

Last, this Court denies Mr. Mohammedi's request for attorneys' fees for time spent responding to defendants' two letters to the Court in light of the result reached herein.

*CONCLUSION*

For the foregoing reasons, I direct defendants to compensate Dr. Reich for his appearance [*9] at his deposition at a rate of $ 225 per hour and plaintiff to compensate Dr. Goldstein at a rate of $ 350 per hour.

**SO ORDERED.**

Dated: Brooklyn, New York

June 22, 2007

MARILYN D. GO

UNITED STATES MAGISTRATE JUDGE